[S. F. No. 9461. In Bank.—January 5, 1922.]

## LAVINIA J. HOTALING, Respondent, v. RICHARD M. HOTALING et al., Appellants.

[1] GIFT—RECOVERY OF CORPORATE STOCK — ACTION BY MOTHER AGAINST SON—EVIDENCE—BURDEN OF PROOF.—In an action by a mother against her son to declare a trust in her favor and have restored to her shares of stock of a corporation claimed by the defendant as a gift from the plaintiff, proof by him that there had been a legal transfer of the shares from his mother to him on the corporate records casts the burden upon her to show, either

that the transfer never operated to invest the ownership of the shares in the defendant, or that if the gift was actually made, it was voidable on the ground of fraud or undue influence.

[2] APPEAL—FINDING—CONFLICT OF EVIDENCE.—A finding on testimony which is substantially conflicting cannot be disturbed by the appellate court whatever the views of the court as to the comparative strength of the testimony to the contrary.

[3] ID.—TESTIMONY OF ATTORNEY—CONSIDERATION ON APPEAL.—The testimony of an attorney in behalf of his client, so far as the appellate court is concerned, is to be received and considered as that of any other witness, in view of the inherent quality of his testimony, his interest in the case, and his appearance on the witness-stand.

[4] ATTORNEY AT LAW — EVIDENCE — WITNESS.—The propriety of a lawyer occupying the dual capacity of attorney and witness is purely one of legal ethics largely to be determined by the attorney's own conscience, and while it is not a practice to be encouraged, it may often occur that conditions exist in which an attorney cannot justly or fairly withhold from his client either his legal services or his testimony as a witness.

[5] GIFT — CORPORATION STOCK — SUFFICIENCY OF EVIDENCE.—In this action by a mother to recover from a son shares of stock in the family estate corporation claimed by him as a gift from her, and of which corporation she was the president and the son an officer and director and active in the management of its affairs, the finding that no gift was made by her is held to be sufficiently supported by her denial that she ever knowingly transferred the title, and her testimony that as president she frequently signed papers at the son's request without reading them and without knowledge as to their contents.

[6] ID.—IGNORANCE OF CHARACTER OF STOCK CERTIFICATES—EVIDENCE —DIVIDEND CHECKS.—Familiarity with dividend checks containing an order for the payment of dividends on stock does not tend to establish familiarity with the stock certificates themselves, and such checks are inadmissible to rebut a statement of ignorance of the physical aspects or contents of the certificates.

[7] ID.—PROVISION FOR FUTURE NEEDS—IMMATERIAL ISSUE.—In an action between a mother and son involving the issue as to whether the former had made to the latter a gift of shares of stock in a corporation, the question as to whether the son had made subsequent provision for the possible future needs of the mother was immaterial, in the absence of any claim that the same was a condition or consideration for the transfer.

___

4. Competency and propriety of attorney as witness for client or adverse party, note, 13 Ann. Cas. 31.

[8] ID.—OWNERSHIP OF STOCK—SELF-SERVING DECLARATIONS.—In an action between a mother and son involving the ownership of shares of stock in the family estate corporation which the defendant claimed as a gift from her, the cross-examination of the defendant as to whether he had said anything to certain persons connected with the corporation as to his ownership of the stock did not justify a redirect examination that he had informed certain other persons not connected with the corporation of his ownership.

[9] EVIDENCE—SELF-SERVING DECLARATIONS.—Declarations made by a party in his own interest are commonly inadmissible, but exceptions to the rule exist under circumstances where a failure to assert a claim or right may be construed against the party as an implied negation, or where the assertion of such claim at a later date is attributed to conditions and exigencies which have arisen since the transaction in question, which motive would be disproved by showing earlier declarations to the same effect.

[10] ID.—CUMULATIVE EVIDENCE—COLLATERAL TRANSACTION.—The exclusion of evidence which is merely cumulative of an undisputed fact, and which relates to a transaction entirely collateral to the main issue, is not error.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Metson, E. J. McCutchen and Peter F. Dunne for Appellants.

Gavin McNab, Nat Schmulowitz and R. P. Henshall for Respondent.

John T. Williams and T. J. Sheridan, *Amici Curiae,* for Appellant.

SLOANE, J.—This action was brought by the plaintiff, Lavinia J. Hotaling, to declare a trust in her favor and have restored to her 2,499 shares of the capital stock of the Hotaling Estate Company, a corporation, which stock at the time suit was begun stood on the books of the corporation in the name of the defendant, Richard M. Hotaling.

9. When declarations of a party are admissible in his favor, note, 93 Am. Dec. 279.

The fact is undisputed that these shares of stock, with one additional share, had originally been issued to and belonged to the plaintiff as her interest in a family estate represented by the above-named corporation. The remaining stock was held in blocks of two thousand five hundred shares each by her son, Richard M. Hotaling, the defendant, another son, Fred Hotaling, and a daughter-in-law, Ella Hotaling, the widow of a deceased son of plaintiff. The plaintiff was the president of this corporation and she and her sons and daughter-in-law constituted its board of directors. The certificate representing these shares in plaintiff's name had been subsequently indorsed by the plaintiff, and canceled, and a new certificate signed by the plaintiff as president of the corporation was issued in the name of Richard M. Hotaling.

On the face of the corporation records the shares in controversy had been transferred from the plaintiff, Lavinia J. Hotaling, to the defendant, Richard M. Hotaling.

The plaintiff and Richard M. Hotaling, as already stated, are mother and son. The whole controversy in the case centers about the claim of the latter that his mother made him a gift of this stock on the 2d of September, 1913, the date of the transfer on the stock books, and some five and a half years before this action was begun.

Richard testifies circumstantially to this transaction, and represents that it was unsolicited on his part, and was made on his mother's own initiative, and that she came to the office of the corporation, of which she was president and of which he was an officer and director, and that the transfer was then and there made by delivering to him the indorsed certificate and issuing the new certificate over his mother's signature as president.

Mrs. Hotaling admits the genuineness of her signature upon written evidences of the transfer, but denies the gift, and disclaims any remembrance of the transaction which resulted in the transfer. There is no other direct evidence as to the transaction than that of the documents and the corporate records above referred to and the testimony of these two principals.

All the other voluminous record in the case, comprising in all over one thousand typewritten pages, is directed to evidence on collateral matters and events tending more or less

strongly to corroborate one or the other of the parties as to
the main issue.

The trial court found for the plaintiff on all the material
issues presented, and it is from the judgment on these find-
ings that the defendants have taken this appeal.

The grounds of error relied on are insufficiency of the evi-
dence to support the findings and the exclusion on the trial
of certain evidence offered in behalf of defendants.

The one controlling fact in this case is in the finding of
the court that the plaintiff, Lavinia J. Hotaling, did not
make a gift of these shares to the defendant, Richard M.
Hotaling.

As stated by the trial judge in reviewing the evidence:
"This issue is the pivotal point and vital issue in this case.
The plaintiff swears that she never made it; the defendant
swears that she did, and, as no other person was present at
either of the alleged conversations relating thereto, or upon
the occasion when it is claimed the gift was made, the issue
of veracity lies directly between mother and son, and this
issue must be resolved by a consideration of the actual con-
duct, writings, declarations, motives, and relations of the
parties; the amount and value of the gift; the financial con-
dition of the donor after such gift, and her ability to
make it."

In passing upon this point the function of this court is
much less complicated than was that of the trial court.

The trial judge was called upon to delicately adjust the
balance so as to determine upon which side, in this great
mass of conflicting evidence and inference, the preponder-
ance might lie, while upon this appeal our only duty is to
ascertain if there was any substantial showing in behalf of
the court's finding to give rational support to the conclusion
reached.

[1] It may be conceded that the defendant's evidence
made a *prima facie* case in his behalf.

The fact was shown that there had been a legal transfer
of this stock from Lavinia J. Hotaling to Richard M. Hotal-
ing on the corporate records. It is conceded that the mere
fact of the existence of the relationship of parent and child
between them does not create that confidential relation which
raises a presumption of fraud in a voluntary transfer of
property from the parent to the child.

The plaintiff was therefore confronted with a transfer of this stock, regular on its face, which cast the burden upon her to show, in order to avoid the transaction, either that the transfer never operated to invest the ownership of the shares in the defendant, or that if the gift was actually made it was voidable on the ground of fraud or undue influence.

[2] The plaintiff here testified that she never gave this stock to her son, or knowingly transferred her title thereto. If there is any weight to be given to this testimony it will not be disputed under the established rules of law in this state that a finding of the court in accordance with such testimony cannot be disturbed, whatever the views of the appellate court as to the comparative strength of the testimony to the contrary.

It is appellants' contention, however, that the plaintiff's testimony in this connection was so meager, vague, and equivocal, and so inherently improbable as not to be entitled to consideration, and, indeed, did not constitute a denial of the transaction as claimed by defendants. The following is the testimony by question and answer as given by Mrs. Hotaling on this point:

"Q. (Mr. McNab.) Mrs. Hotaling, I show you a certificate dated December 2, 1913, purporting to be a certificate for 2,499 shares, certificate No. 15 in the Hotaling Estate Company, and your signature, in favor of R. M. Hotaling, is this your signature? (Exhibiting signature to the witness.)

"A. Yes, that is my signature all right.

"Q. Do you have any memory, have you any recollection?

"A. Of signing that?

"Q. Have you any recollection of ever signing this certificate?

"A. None whatever.

"Q. Did you ever, at any time, give 2,499 shares of your stock in the Hotaling Estate Company, or any other number of shares, to Richard M. Hotaling, your son, or to anybody else?

"A. Not that I know of—of the Hotaling Estate?

"Q. Of the Hotaling Estate Company?

"A. No.

"Q. Did you ever give any shares to Richard M. Hotaling, your son, or to anybody else, at any time?

"A. No."

Certificate No. 15, in words and figures as follows, was introduced in evidence:

"San Francisco, Cal. Dec. 2, 1913, No. 15.

"This certifies that R. M. Hotaling is entitled to 2499 shares of the capital stock of the Hotaling Estate Company, incorporated Nov. 30, 1904, transferable on the books of the company by endorsement hereon and surrender of this certificate.

(Signed) "C. W. CONLISK, Secretary.
"LAVINIA J. HOTALING, President."

Corporate seal attached, and indorsed: "R. M. Hotaling."

"The Court: I suppose it is admitted that that is the signature of the defendant, is it?

"Mr. Dunne: On the back, yes, sir.

"Mr. McNab: Will you let me have the certificate book showing the previous certificate to this?

"Q. Mrs. Hotaling, I show you this signature on the certificate of stock purporting to be Hotaling Estate Company for 2499 shares, in which the figures are written on the upper line and the name 'R. M. Hotaling' on the lower line.

"Mr. Dunne: For the purpose of identification, bearing date?

"Mr. McNab: Bearing date Dec. 2, 1913.

"Q. Is that your signature? (Exhibiting certificate of stock to the witness.)

"A. Yes.

"Q. Do you have any recollection—No. 14. I am going to have it read in after—do you have any recollection whatever of ever having signed this certificate?

"A. I have not.

"Q. Mrs. Hotaling, did you ever give this certificate, or any other certificate of any shares of stock in the Hotaling Estate Company to your son, Richard M. Hotaling, at any time?

"A. No."

The witness then had her attention called to the indorsement of her name on the back of the paper and was asked if she signed it. After considerable quibbling over certain dissimilarities from her ordinary signature, she conceded that it was her signature.

"Q. Well, whether it is your signature or is not your signature, have you any memory of ever having placed your signature on the back of this certificate of stock?

"A. No. I don't in no way, it would be a funny thing for me to give away my stock.

"Q. There is a stub, showing a stub connected with the Certificate No. 1, Dec. 6, 1904, in the Hotaling Estate Co. Is that your signature to the stub? (Exhibiting to the witness.)

"A. Let me look at that 'Lavinia'—I am a little suspicious of that—well, it looks like my signature, 'Lavinia' is written pretty well, better than I generally write it, but, however, let it go, say I signed it.

"Q. Have you any remembrance whatever of having signed this stub that I showed you the signature?

"A. Have I what?

"Q. Have you any remembrance of signing it?

"A. No.

Mr. McNab: Q. I am showing you a certificate dated December 6, 1904, certificate No. 6, purporting to be for 2498 shares, is the name of Lavinia J. Hotaling, showing you the indorsement on the back of that, 'Lavinia J. Hotaling.' Is that yours? (Exhibiting to the witness.)

"A. I am suspicious of the 'Lavinia,' but as I say, all right, say I signed it, the 'Hotaling' looks like my writing, and the 'J,' that is too good, I do not write as even as that 'Lavinia,' that is written exactly the same, let it go, say 'Yes.'

"Q. Have you any remembrance of either having signed the stub of this certificate or the back of this certificate?

"A. Not the slightest remembrance, so it might just as well go I signed it, because they are all signed the same.

"Mr. McNab: Q. Mrs. Hotaling, did you ever give these certificates that I have last shown you, or any other certificates of your shares of stock to the Hotaling Estate Company at any time to your son Richard M. Hotaling?

"A. Not to my knowledge.

"Q. Well, did you ever give them at any time?

"A. No."

The witness further testified that she first learned that Richard Hotaling made any claim to her stock some years later, shortly before the beginning of this action.

The testimony as quoted contains a bare denial by plaintiff that she made any gift or conveyance to her son, Richard, qualified, however, by the admission that the signatures shown her are her signatures, and the repeated statement that she has no recollection of the event, of being shown the documents, of signing her name, or of any conversation between herself and Richard leading up to the transaction.

Assuming that these statements of the witness are credible and were believed by the court, and they evidently were so accepted, they are not lacking in probative force, as appellants assume.

Of course, if this transaction took place, as Richard M. Hotaling testified; if it was preceded by a conversation in which Mrs. Hotaling told Richard that on account of the reckless character and disposition of her younger son, she had made up her mind to turn over all her stock to him, Richard; if she on the day in question went to the office of the corporation, and called upon Richard to produce her certificates that she might make the transfer they had previously talked about, it would be indeed incredible that she could not remember about it. On the other hand, if all that occurred was that on an occasion of her visit to the office, Richard, as the active and responsible manager of the affairs of the company, brought to his mother certain papers and documents and asked her to sign them as the corporation's president and she signed, as she testified that she was accustomed to sign such corporate papers, at his request and without reading them or having their contents explained, then it would be the most natural thing in the world that she would several years later retain no knowledge or memory of the event or anything connected with it.

Indeed, if it is true, and the trial court evidently accepted her statement to that effect as true in passing upon the sufficiency of this evidence to support the findings, that Mrs. Hotaling actually had no memory at the time of the trial as to the circumstances and conditions under which she attached her name to these papers, it would afford very persuasive evidence that she was not at the time consummating a gift of a million dollars worth of stock to her son. If she was conscious of the fact that she was transferring this stock to Richard Hotaling with the purpose of making a gift of it to him, of course she, being a woman of sound

mind, would have remembered it. If she did not remember it, it doubtless was because no such gift was made. She said she did not give the stock to her son. She said she had no recollection of the circumstances of signing the certificate. The trial court believed her. It is true that there is room for controversy as to the application of some of her averments of want of recollection. They might be open to the construction that she meant to say that she did not remember whether she made a present to Richard of her stock on that day, but in the light of all the evidence it is fairly apparent that what she was testifying to was that she did not give away her stock, that she was not aware of the fact that she was executing such a transfer as the records show, and that she had no recollection whatever as to the circumstances leading up to signing of the papers.

If such was the case, and the court has so found, it of course follows, in the absence of any facts creating an equitable estoppel against her, and there are none, that Richard Hotaling could acquire no beneficial interest in this corporate stock as against his mother.

This conclusion is further supported by evidence sustaining the further finding of the trial court that the personal and business relations between Richard Hotaling and his mother were such as to establish the existence of confidential relations between them which called for the exercise of the strictest good faith on his part, and which would tend to corroborate her testimony that she had no intimate knowledge of the business of the corporation itself; that it was under the management of her son, Richard; that she had implicit confidence in him both as her son and as the managing head of the corporation, and was accustomed to sign all papers pertaining to the corporation at his request and without investigation or knowledge of their contents.

It is unnecessary to go any further than this in defining the confidential relations between Mrs. Hotaling and her son Richard. They were at least such that he could not hold her to a transfer of her stock made inadvertently and without knowledge of what she was doing and without consideration.

This proposition is elementary. Counsel on both sides have ably and with great research compiled the decisions of the courts upon the degrees of confidential relations between

parent and child and the conditions and circumstances under which a conveyance from a parent to the child will be avoided unless shown to have been made freely and voluntarily, with full knowledge of all the facts and after the parent has had independent advice. It is not necessary to apply that rule here in all its strictness. It may be granted that if Mrs. Hotaling made this transfer to Richard, as he testifies that she did, it would constitute a valid executed gift. Though seventy-four years of age, she was a mentally vigorous and competent woman, who evidently looked after her own private interests, and even dominated the affairs of the corporation in matters where she felt herself personally concerned. She was quite capable of forming an independent judgment where her son Richard was concerned, as well as in matters relating to other members of her family. According to the story narrated on the witness-stand by Richard Hotaling, the plaintiff told him one night after her younger son had come home under the influence of liquor from a social function where he had, it appears, made something of a scandal, that she was not going to bother with Fred any longer; that if he was going to conduct himself in that manner and lose everything he had, she was determined that he was not going to lose any more than he now has. She then said, according to this testimony: "Now, Dick, I can rely on you. I have been thinking this thing over, and I want to give you all of my stock in the family estate, and then if Fred makes any trouble he will have you to deal with." "Then," the witness continues, "I said to her, 'Why, now, Mama, why you are excited now; just don't think any more about this.' 'Oh, no,' she said, 'this is not the only time; I have put up with him in this kind of thing for a great many years. He has promised me on many occasions that he would give up drinking and he does not keep his word. . . . My mind is made up, Dick, and I think it is the best thing to do. You know how it was with Anson. When Anson passed away, he had made everything over to Ella, and there was no fuss and there was no trouble. I have a very bad heart, Dick, I get that from mother. You see how my head shakes, and some day I may get one shock too many. Now, I am determined in this thing. I have made up my mind. I think it is the best thing that you should have my stock and I want to give it to you.' "

187 Cal.—45

The witness testifies to more conversation of this nature and says that he advised her to wait awhile; that he was going to Marin County to spend Thanksgiving and when he came back next week they would see about it; that when he returned after Thanksgiving, his mother renewed the topic and reiterated her purpose to give him the stock, and it was finally agreed if she felt that way for her to come to the office the next afternoon and they would fix it up. That she came to the offices of the corporation the afternoon of the following day and said: "I am here, Dick, to fix that matter up and give you my stock." That he at her suggestion then procured the certificates and the transfer was made as heretofore stated, Mrs. Hotaling at his suggestion retaining one share of the two thousand five hundred shares she owned in the corporation to qualify her to remain as the president and a director of the corporation: Mrs. Hotaling at the time owned a considerable amount of other property and it appears was fully aware of her financial condition.

If the facts could be accepted as thus testified to by Richard Hotaling, we are not prepared to say they would not establish a valid and binding gift of the 2,499 shares to the son, Richard. The facts thus narrated would show a deliberate, independent transfer on the part of Mrs. Hotaling, with a full knowledge of all the consequences of her act necessary to make the gift complete and binding.

But the trial court found that this version of the transfer was not true, and unless we can disregard the finding of the court and ignore the testimony of Mrs. Hotaling, together with such evidence as was produced in corroboration of her denials of having made a gift to Richard, the judgment cannot be disturbed for want of proof to support the findings as to the ultimate issue in the case.

It seems scarcely worth while to discuss the other evidence in detail. As we have stated, it is wholly concerned with collateral matters, bearing but indirectly and inferentially upon the primary facts testified to by mother and son. While the facts developed have evidentiary value on one side and the other, they are in sharp conflict both as to their substance and as to their probative effect. The trial court may have gone further than would be justified by the cold print, if it were our province to weigh the evidence, in

accepting all the testimony on behalf of the plaintiff and rejecting all that for defendants, but it had the witness before it, and received the evidence in detail through a trial lasting many days. There were circumstances testified to which give color to Richard Hotaling's story, and witnesses testified to statements made by Mrs. Hotaling in the years subsequent to the transfer which might fairly be construed as admissions of the gift of her stock.

On the other hand, it was shown that Mrs. Hotaling continued to deal with, and in some instances dictate, the affairs of the corporation, as if she were an interested stockholder; and transactions were had and statements made by Richard Hotaling apparently inconsistent with his claim of ownership of his mother's stock.

Subsequent to the alleged gift and transfer of practically all of the plaintiff's interest in the corporation, she is found disputing with Richard as to the retention of certain employees of the company, the management and disposal of some of the corporate property, the manner of conducting the business, in most of which matters Mrs. Hotaling succeeded in having her own way, and in the discussion of which no question was raised as to her having no beneficial rights in the premises. It is conceded that no person besides Richard Hotaling and the plaintiff is claimed to have had any direct knowledge of the transfer of this stock, and whatever indirect evidence was produced as to such a gift consisted of two or three casual conversations by the plaintiff testified to by Ella Hotaling and a Mrs. Sullivan, a former employee in the family, in which Mrs. Hotaling made reference to having divided her property between her sons. It appears that she had given to each of them property other than this stock, and the references to the gifts were too vague and uncertain to include definitely the transfer of the corporate stock. The same indefiniteness and inconclusiveness may be ascribed to a number of oral statements attributed by plaintiff's witnesses to Richard Hotaling, which were construed as admissions that his mother continued to be the owner of her original shares in the corporation.

As conceded by both parties, evidence of oral admissions, particularly where inferential rather than direct and ex-

plicit, is about the most unreliable and uncertain evidence that can be produced.

But on the part of plaintiff there was introduced in evidence certain letters of Richard M. Hotaling written subsequently to the alleged gift, which at least are not subject to the taint of uncertain memory, and which may be fairly held inconsistent with his claim of ownership of substantially the whole of his mother's stock. He refers in one letter, in connection with a reference to his mother, to "a list of the inactive properties that we have in San Francisco as well as some of our outside properties." In another he alludes to his mother being "thoroughly acquainted with the change in the handling of our real estate for it was discussed with her and thoroughly explained." Another, in response to a letter from Mr. McNab calling for a statement and report of certain of the corporate properties to be placed in the hands of Mrs. L. J. Hotaling, states that the report is being made and will be furnished, but that the writer "is very sorry that this request has been made, because I know that Mrs. Hotaling is surrounded by some persons into whose hands it will be just as well that detailed matters connected with our estate should not go." The statement in a letter to Frederick C. Hotaling that "Mother has told me that she is perfectly willing that Hind & Co. should look after our affairs." These quotations are not in themselves of special significance, but covering a period of time and transactions affecting the corporate business, and containing no word in any instance to negative the mother's continued rights in the premises, they were matters which the trial court had a right to weigh in the consideration of the plaintiff's categorical denial that she had made the alleged gift of her stock.

A great volume of the testimony in the trial related to a transaction concerning the disputed right of Richard M. Hotaling to other property consisting of a ranch known as the Sleepy Hollow ranch, in Marin County, and to which he had obtained a conveyance from the corporation.

It had no relation to the stock transfer, and is of such doubtful relevancy, and of so slight evidentiary value, that it does not require discussion.

[3] We are of the opinion that too much importance has been given, and too much irritation developed, over the fact

that much of the evidence for the plaintiff was given by one of the attorneys in her behalf, as a witness in the case. So far as the court is concerned such testimony is to be received and considered, as that of any other witness, in view of the inherent quality of his testimony, his interest in the case, and his appearance on the witness-stand.

[4] The propriety of a lawyer occupying the dual capacity of attorney and witness is purely one of legal ethics largely to be determined by the attorney's own conscience. While it is not a practice to be encouraged, it may often occur that conditions exist in which an attorney cannot justly or fairly withhold from his client either his legal services or his testimony as a witness.

We have scarcely referred in this opinion to the elaborate and resourceful discussion of learned counsel of the questions of law involving confidential relations, and burden and degree of proof, and have but touched upon a review of the voluminous evidence, because of the fact that it is too manifest that any nice distinctions in these matters are foreclosed by the findings of the trial court on the outstanding issue, as to whether or not Mrs. Hotaling ever made or attempted to make a gift of this stock to her son.

[5] The decision of the trial court that there was no act or purpose on the part of plaintiff to so dispose of her rights reduces the question before us to the simplest elements. Was there sufficient evidence to support the finding? We are clearly of the opinion that there was. Had a gift or intent to make a gift been proven, it may be conceded that such transfer could only be set aside on clear and convincing proof of fraud or *mistake*. But the finding here goes to negative the effect of the original transaction and holds that there was no gift.

[6] In supplement to the objection to the sufficiency of the evidence to support the findings, appellants allege certain errors of the trial court in the rejection of evidence offered in behalf of defendants. First: The plaintiff had testified in support of her claim of ignorance of the details of corporate affairs, that to her knowledge she had never seen any stock certificates. In rebuttal of this statement defendants showed that Mrs. Hotaling had owned shares of stock in other corporations. There were also offered in evidence certain dividend checks on this stock that had been re-

ceived by Mrs. Hotaling. These checks were excluded from evidence, and the ruling of the court is assigned as error. In making this ruling the trial judge said: "I admitted in evidence the certificates of stock just referred to as bearing upon the question whether or not this lady had any knowledge, or rather the extent of her knowledge, if any, as to what a certificate of stock was, its appearance and the like. Consequently I don't see how these are relevant and I will sustain the objection." In other words, the court held that familiarity with dividend checks containing an order for the payment of dividends on her stock would not tend to establish any familiarity with the physical aspects or contents of the stock certificate itself, and that was the point to which the evidence was directed. The general familiarity of the plaintiff with corporate shares and the dividends therefrom was abundantly evident and we do not think seriously disputed. In explaining how she may have signed the certificate transferring her stock to Richard Hotaling without knowing what it was, she had made this statement that she did not know what a stock certificate looked like, and her knowledge of dividend checks would throw no light on this point.

[7] Second: Question was raised on the trial whether, after the alleged gift by his mother of her interest in the estate of Richard Hotaling, he had made any provision for her possible future needs. He testified that he had provided for her in a will executed in August, 1914, but that this will had been destroyed. It was then brought out that a new will was made in August, 1918, some two months prior to the beginning of this action. He was asked by plaintiff's counsel if he had made any provision for his mother in this latter will, but, upon the objection of his own counsel that this would be incompetent, he was not permitted to answer. Counsel for plaintiff then demanded the production of the will, but when later it was produced, refused to offer it in evidence. We find nothing to comment upon thus far under this head. Plaintiff's counsel were not required to offer the will in evidence, and defendants' counsel did not do so and are not claiming that it contained anything relevant to the case.

Attention, however, is called to an offer on the part of defendants' counsel to prove the contents of the destroyed

will in explanation of a statement brought out on cross-examination in a letter of Richard Hotaling to his brother Fred, in which it was stated: "My will, as you know, is in your favor. When I die you will get all I possess." This was in apparent contradiction of the testimony that he had provided for his mother in such will. On redirect examination counsel for defendants offered to show, by proving the contents of the lost will, that the will in question left Richard's entire estate to his brother, Fred, in trust to pay the proceeds to his mother during her life, then to Fred during his life, then the entire remainder to the children of the deceased brother.

The court sustained an objection to this proof.

We think this ruling was clearly erroneous if any significance is to be attached to the declaration in the letter that everything had been left to Fred. That declaration raised the implication that the statement in the former testimony, that he had provided for his mother by this will, was untrue, and the proffered proof of the contents of the will would have explained the apparent contradiction in the evidence.

But we fail to see the materiality of the issue thus raised. What bearing does the question as to whether Richard Hotaling made subsequent provision for his mother have upon the question as to whether or not she made him a gift of her corporate stock? It is not claimed by anyone that this was a condition or consideration for the transfer. If it stands upon any foundation whatever, it is upon a purported statement long subsequent to the transfer made by Richard to his mother that he would provide for her every need. At the time of the alleged gift Mrs. Hotaling had ample remaining property in her own right to support her.

The evidence as to the apparently contradictory statements of Richard Hotaling as to the provisions of his will were brought out by plaintiff's counsel without objection, so far as we have been able to discover, but it was a collateral and immaterial issue and not the subject of impeachment. Its remoteness from the main issues of the case, we think, removes it from the class of prejudicial error.

Third: In order to show the obligation to her son, Richard, under which Mrs. Hotaling rested, Richard had

testified that before the division and distribution of the interests in the family estate among the members of the family, which were then operated under an incorporation known as A. P. Hotaling & Co., a plan had been drawn up whereby the stock of the corporation was to be distributed in equal shares to the three sons, the elder son, Anson, since deceased, then being alive, and the mother was to be left out, with some indefinite provision for her support during her lifetime; that when this plan was presented at a family meeting for the purpose of considering it, Richard, as soon as the proposal was made, protested against it, declaring that it was unjust to his mother and that this was the first he had heard of such a scheme. That, as a result, this proposed settlement was abandoned and the mother was given an equal share in the estate with each of the children, which adjustment resulted in her receiving full two thousand five hundred shares in the estate company, afterward incorporated, which is the stock involved in this action. In corroboration of this testimony the defendants offered in evidence certain canceled and unissued certificates of stock in the stock certificate book of the A. P. Hotaling Company showing the preparation of such certificates for issuance in blocks of one-third each, of the entire stock to the three sons, in connection with the alleged settlement, which Richard Hotaling claims to have frustrated.

On objection of plaintiff's counsel, the trial court excluded this evidence. There was no prejudicial error in this ruling. It is not disputed that such a division of the stock was attempted. The plaintiff herself testifies that she was present at the meeting when this proposed settlement was presented. That she indignantly voiced her objection and that the plan was abandoned. The only point in controversy is as to Richard's part in defeating it. These canceled and unissued certificates could throw no light on that proposition. The only evidence as to Richard Hotaling's agency in the matter is his own version, as already referred to, supported, as we remember, by the testimony of another witness as to admissions to the same effect by Mrs. Hotaling, and Mrs. Hotaling's own testimony, in which she agrees with Richard as to the preliminary facts, but gives a somewhat different version as to the nature and extent of his disclaimer and protest.

[8]  Fourth: Richard Hotaling was asked, on cross-examination, whether, "in the conduct of the corporation" or "in the various transactions of the business" he ever did anything or said anything either to Mr. McNab, Mr. Richardson, or Mr. Umbsen to inform them, or either of them, that he was the owner of this stock, to which he answered that he had mentioned said matter to none of these excepting to Mr. McNab on January 18, 1918.  Upon redirect examination counsel for defendants asked the witness if he knew certain persons, none of whom excepting Ella K. Hotaling appear to have had any connection with the Hotaling family, or the affairs of the parties to this action. He answered that he did know them.  The following question was then put to the witness: "I will ask you, Mr. Hotaling, if subsequently to the second day of December, 1913, and during the year 1914 and 1915, you did not inform each and every one of the persons I have just named that your mother had given you her interest in the Hotaling Estate Company."  The witness answered in the affirmative, but the answer was stricken out on plaintiff's objection that it was "self-serving, irrelevant, incompetent, and immaterial, and not shown to have been made in the presence of Mrs. Hotaling."

The testimony thus excluded cannot be said to have been properly offered in rebuttal of the matter drawn out on cross-examination.  The question on cross-examination was directed to any claim of ownership of the stock, to persons connected with the corporation in matters relating to the transactions of the business.

One of the contentions of the defendants on the trial was that subsequent to the date of the alleged gift the affairs of the corporation were carried on precisely as though Mrs. Hotaling was a party in interest in the corporate affairs and without anything to indicate Richard Hotaling's claim of ownership of this stock.  The parties named in the question put on cross-examination were all persons in close relation with the corporate affairs during this period.  The persons regarding whom the evidence on redirect examination was excluded, with the exception of Ella Hotaling, who was aligned with the defendants in the action, were strangers to the corporation and its business.  Statements made to them

would not constitute a challenge to Mrs. Hotaling's rights as a stockholder.

[9] Such declarations made by a party in his own interest are commonly inadmissible. Exceptions to this rule exist under circumstances where a failure to assert a claim or right may be construed against the party as an implied negation, or where the assertion of such claim at a later date is attributed to conditions and exigencies which have arisen since the transaction in question, which motive would be disproved by showing earlier declarations to the same effect. (*California Elec. L. Co.* v. *Safe Deposit & Trust Co.*, 145 Cal. 124, [78 Pac. 372]; *People* v. *Rodley*, 131 Cal. 240, [63 Pac. 351]; *People* v. *Doyell*, 48 Cal. 85; *Commonwealth* v. *Jenkins*, 10 Gray, (Mass.), 485; 40 Cyc. 2789.) The declarations here excluded do not purport to have been made to parties or under circumstances to bring them within any of the recognized exceptions to the rule.

If the excluded testimony was offered on the broader ground that it was intended to rebut any implication that may have arisen on the trial that Richard Hotaling had tried to keep secret any claim of ownership of his mother's stock from the time of the transfer, it might be admissible for that purpose, even though not strictly redirect testimony. But in view of the facts that none of the parties communicated with was concerned in the ownership of the stock, or was interested in or hostile to the witness' claim of ownership, and that the evidence but inferentially tends to prove a fact that in itself if proved would only give rise to another inference, the error, if there was such, cannot be given such prejudicial weight as to justify a reversal.

It is true that Ella K. Hotaling, one of the persons named, was a member of the family and a stockholder in the corporation, but she has herself testified to facts showing her understanding that Richard Hotaling owned his mother's stock and is a witness in his behalf. To show further that Richard had declared to her his claim of ownership would aid little in removing the stigma of secrecy, if any such existed.

[10] Fifth: The final exception to the court's rulings on the exclusion of evidence presented in appellants' brief arises on the rejection of a letter written by Fred C. Hotaling in which he confesses to the circulation of certain

slanderous reports concerning Ella K. Hotaling. Appellants claim that this letter, written to the defendant, Richard Hotaling, is relevant and material in explaining Richard Hotaling's unfriendly relations with Fred, and the motive and inducement governing Richard in making certain alleged statements to his mother regarding the recording of the deed to the Sleepy Hollow ranch, which he had held without record for so many years, and in the making of his wills. The unfriendly relations of the two brothers are undisputed. Richard had already testified to the fact of the scurrilous stories circulated by Fred, and to the confession of the latter that he had circulated them, and to the breaking of all relations with Fred. The existence of these facts and conditions are undisputed; indeed, are conceded. The letter in question, though perhaps the best evidence of the fact of confession, was but cumulative. As we have already indicated, the Sleepy Hollow ranch transaction was remote and entirely collateral in relation to the main issue of this case. Any possible application of the acts of Fred Hotaling, either in making or admitting his insinuations against Ella K. Hotaling, was supplied by Richard's uncontradicted testimony as to his understanding of the matter, and does not depend upon Fred's confession. We can see no possible error or prejudice in its exclusion.

As already stated in this opinion, we find in this record on appeal many reasons for putting a more favorable construction upon the defendants' side of this controversy than were indulged by the trial court, but upon a review of the whole case, it is clear that the findings which support the judgment have substantial support in the evidence. And the alleged errors of law which counsel for appellants themselves refer to as "presented for argument's sake and that alone," if they amount to error, do not, "after an examination of the entire cause including the evidence," indicate "a miscarriage of justice."

The judgment is affirmed.

Wilbur, J., Shurtleff, J., Shaw, C. J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred.