[Civ. No. 7299. First Appellate District, Division One.—July 23, 1930.]

MERVIN J. MONNETTE, Respondent, v. TITLE INSUR-ANCE AND TRUST COMPANY, Executor, etc., Appellant.

Newby & Newby, Louis P. Guernsey and Newcomb Condee for Appellant.

Dockweiler & Dockweiler & Finch, H. L. Carnahan and Harry Povey for Respondent.

PARKER, J., *pro tem.*—This is an action to recover possession of and quiet the title to certain Liberty bonds aggregating in value the sum of $94,000.00.

In the court below judgment went for the plaintiff and the defendant appeals.

The plaintiff is the surviving husband of Ethel M. Monnette and the defendant Trust Company is the executor of the last will and testament of the said Ethel Monnette. At the opening of the trial it was agreed that the only question to be decided was as to the ownership of the bonds in dispute. The appeal is presented upon a bill of exceptions and the appellant urges three grounds for a reversal. It contends that the evidence is insufficient to sustain or support the judgment and that the court below erred in its rulings on the rejection of certain testimony offered. In addition, it is strenuously contended that the trial court's action in denying appellant's motion for a new trial was prejudicial and erroneous to an extent demanding that the case be sent back. The greater part of the argument is directed to the first contention, though the other grounds are as insistently urged.

We are not asked to again determine any conflict in the evidence; indeed, there is little conflict, excepting upon minor matters. Most of the testimony offered was presented by the plaintiff, as is quite frequent in cases of this character where the defense is on an executor, whose direct knowledge of the facts involved is often meager.

It is appellant's contention that, irrespective of what evidence may have been presented by the defendant, the case of plaintiff is in itself so inherently weak and incredible and self-destroying as to furnish no support whatever for the judgment entered. Therefore, it becomes necessary to turn to the evidence adduced.

Plaintiff Mervin J. Monnette and the deceased Ethel M. Monnette were married in the year 1915. At the date of

marriage plaintiff was of the age of sixty-nine years and the decedent was at said date of marriage of the age of thirty-six years. Both had been previously married, the wife having been married twice before, having been divorced from her first husband and the second husband having died in 1912. It appears that the plaintiff at the time of his marriage was a man of wealth and of some business experience. Likewise was the wife acquainted with business dealings though her capital was somewhat limited. The record discloses that at the date of the marriage herein discussed, the wife's capital was approximately $26,000. The capital of the wife was dissipated through unfortunate investments and long prior to her death her original fund had been exhausted. At the time of her death her estate inventoried in excess of $70,000, exclusive of the bonds in dispute. At the time of the marriage each of the parties had leased separate safe deposit boxes. At a time after the marriage the wife surrendered her individual box and the same box was again leased by the parties as joint tenants. In 1921 the joint tenancy was terminated and abandoned, in so far as the deposit box was involved, and the wife again took the same box in her own name. Prior to the year last mentioned the bonds in question had been purchased. There is sufficient evidence indicating that the funds used in the purchase were originally the separate funds of the plaintiff, although there may be some confusion on this point which will be here noted. It was the plan of plaintiff, approved by the wife, that there be established a fund approximating $200,000, to be considered a fund in joint tenancy and to become the sole property of the survivor upon the death of either. It was from these funds that the bonds were purchased. Likewise, it might appear that the bonds were purchased with the separate funds of the plaintiff and after purchase were put into this fund. In either case, the origin of the moneys employed was the separate property of the plaintiff. These bonds were all bearer bonds, carrying, on their face, nothing to indicate ownership. After the death of the wife Ethel M. Monnette on January 29, 1927, these bonds were found in her individual safe deposit box, together with her will and other personal property, which will be hereinafter referred to. In the box was found a document, inventorying, with other stocks and

bonds, the Liberty bonds here in question. At the beginning of this inventory, and as a part thereof, was the following statement: "All the stocks and bonds in lock box No. 4288 in the Citizens National Bank, Los Angeles, California, belong to and is the separate property of Ethel M. Monnette and consists of the following: (here follows the list)." This document was dated October 3, 1921, and was signed by Mervin J. Monnette, plaintiff. It may be here noted that the box of the wife and in which the document was found, and in which were the bonds, was the box named in the statement. In September of 1921, while the plaintiff was suffering from an illness somewhat grave in its nature, he signed a document to the same effect, stating that the bonds in question were the separate property of Ethel M. Monnette. In March of 1920, at the time of the purchase of $52,000 worth of bonds, the plaintiff indorsed on the envelope containing the bonds that the same were the separate property of Ethel M. Monnette. It is upon these signed documents that appellant bases the greater part of its contention. And this contention, in the main, is that the explanation offered by plaintiff is of an emergency character, designed only for the purposes of sustaining his claim, inherently improbable and suspicious and entitled to no weight. However, the court below accepted this evidence and we may analyze the same in an effort to disclose all or any of the faults ascribed to it by appellant.

The plaintiff testified that at the time of the marriage of himself and the decedent there was a great disparity in their respective ages. This fact is conceded. That by reason of that fact it was accepted as a foregone conclusion, based upon ordinary knowledge and expectation, that, in the absence of something unforeseen the plaintiff would predecease his younger spouse. She was constantly urging her unhappy plight upon the passing of plaintiff, and her anticipated widowhood. That it was due to the fact that he desired her to be provided for, beyond the claims of his natural heirs, he having lineal descendants by his former marriage, that he had given her evidence of separate ownership of the bonds herein involved. He testified that the idea of these documents originated with the decedent and that his acquiescence was in part due to the expectation of his predeceasing her and the purpose in mind, namely, her

protection and support. However, at the time of executing the document found in the deposit box, plaintiff testified that another document was executed, which latter document was of the same general nature, but signed by Ethel M. Monnette and declaring that the bonds in question belonged to and were the separate property of the plaintiff Mervin J. Monnette. He testified further that the purpose of these cross-acknowledgments was to create something in the nature of a joint tenancy, having at least the characteristic of such a tenancy, namely, a passing of the estate to the survivor. Further, he testified that without such an arrangement he would not have signed the document that he did sign and which was found in the box of the decedent. Further, the record discloses that all of the business dealings concerning sales of bonds, transfers thereof or exchanges were conducted and negotiated by the plaintiff. The appellant, for what reason it cannot be discerned, offered in evidence a will executed by the plaintiff, wherein he specifically refers to the bonds in question and which was dated after the execution of the document of October, 1921. This will was prepared by plaintiff with the assistance of the trust officer of a bank, and while we cannot readily discern its independent value as evidence, nevertheless it is a part of the record at the instance of the appellant. The document referred to by plaintiff as having been executed by the wife was not available in the court below. The only attempt to account for its absence was the testimony of plaintiff to the effect that both documents, that signed by himself and the one signed by the wife, were kept by the latter and presumably together. The plaintiff saw the two placed together in the deposit box of the wife a day or so after the said documents had been signed and he assumed that they remained there together thereafter. In the box were stocks and bonds, admittedly owned in joint tenancy and which were turned over to the plaintiff by the executor of the wife's will, without protest. In addition to the foregoing, is testimony of a nurse who was on terms of intimacy with the wife, from which it appears that the wife had often expressed her dislike for and toward the plaintiff and from which it might easily be inferred that affection alone was not the cement of the union.

In the deposit box of the wife, along with the will, was a letter addressed to plaintiff and signed by her. This letter discloses that the existence of the will and its contents were kept from plaintiff and throughout the letter is expressed the thought that plaintiff has funds of his own sufficient for his welfare and support and stressing the need of the wife's family, the beneficiaries of the will.

Appellant contends that the entire testimony of plaintiff should have been ignored. The principle of law invoked is that testimony of one claiming a benefit or setting up title to property through oral agreement with one deceased should be received with great caution and in the absence of some corroboration should be ignored. Many cases are cited in support of this contention and it is unnecessary to attempt an analysis of the authorities. The policy of the law is expressed in the code sections (Code Civ, Proc., sec. 1880 et seq.), and the express enactment goes no further than to exclude the testimony of a claimant against the estate of a decedent. Where, as here, the action is not upon a claim, but in the nature of an action to recover specific property or to quiet the title thereto the section has no application. The section is cited, however, as disclosing the legislative intent and the extent of the positive statutory law upon the subject. Therefore, the testimony of the plaintiff herein, though subject to the closest scrutiny, is admissible and competent, and, unless, in itself inherently weak or improbable or at variance with admitted facts or physical conditions, is entitled to whatever weight the trial court might give to it. Therefore, we may further analyze the testimony hereinbefore generally recited and test its strength or weakness or its probability, supporting it with such inferences as experience and reason might provide.

Considering, at the outset, the status of the parties at the date of their marriage, the plaintiff was almost at the end of man's allotted span, while the wife was of an age where she might, with confidence, expect many years of life. He was a widower with a grown family and she had passed through two matrimonial experiences. The general experience of mankind in like affairs renders it easy to assume that the union was not prompted by those romantic motives which often impel the mating of youth. It can readily be supposed that the rearing of a family was not the prime

motive of this union, but rather would it be inferred that the purpose thereof was companionship and support, legitimate enough and not subject to censure. There is, in the record, the admission of the wife that plaintiff was not the one who proposed the marriage. From this it follows that under the conditions the story of plaintiff that the wife was constantly importuning him for protection and for some evidence of her ownership that would safeguard against the claims of his children, is not improbable. The further admitted fact, at least a fact not controverted, that the wife had no means or money of her own, save and except the amount she had lost after her marriage and that her admittedly separate estate totaled in excess of $70,000 renders it easy of belief that the moneys invested in these bonds were the separate property of the husband. The repeated demands of the wife for these written acknowledgments of her ownership and particularly at a time when the husband was ill, in view of her admitted business experience and ability to deal with her own property without aid or advice from the husband do not comport with what might be considered a reasonable course of conduct on her part if the bonds were in fact her separate property. The further fact that she alone had access to the box wherein had been placed the document acknowledging the ownership of plaintiff, coupled with the fact that on her last visit thereto she left the will under a fear of an illness threatening her life, together with a letter to the husband, in which she expressed such solicitude for the future of her own relatives and impliedly requested his assent, all support the conclusion of the court below that plaintiff should prevail. It is a further fact, well illustrated in the reports of the decisions of courts of last resort throughout the entire nation, that it is often the desire of laymen to avoid the time and expense of probate and with this end in view effort is made to so arrange business affairs between husband and wife so that upon the death of either the survivor can carry on without interference or question. This was manifest in the case before us. Much valuable stock and many worthy bonds were carried in the names of both spouses, with the right of survivorship. But in the case of the bonds it appeared that these were bearer bonds and on their face indicated no ownership and without an exchange thereof

into registered bonds or transferring the investment elsewhere the only method of creating a joint tenancy was by some writing separate from the bonds themselves. ■ The mere fact that the attempt might have been abortive or of no legal effect could not serve to change the intent or to change the transaction into an outright gift. (*Estate of Hall,* 154 Cal. 527 [98 Pac. 268]; *Hotaling* v. *Hotaling,* 187 Cal. 695 [203 Pac. 745]; *Hotaling* v. *Hotaling,* 193 Cal. 368 [56 A. L. R. 734, 224 Pac. 455].) ■ The cases cited are illustrative of the point that to complete a gift there must be the actual intent to give, not the intent to create some other interest or conditional estate, and that a mere transfer of possession with no intent of passing title will not suffice to complete the gift. The fact that there was never an out and out transfer direct in language and expressly identifying the property transferred is also worthy of note. Such other admittedly separate property of the wife that came into the hands of the executor showed upon its face the ownership and it might be inferred from this that she was vigilant enough to secure ample evidence of exclusive title when the property involved was her own or was to be considered her own.

With reference to the bonds we have nothing but a transaction wherein each acknowledged the ownership in the other. Continuing along after the writing of October, 1921, the evidence supports the conclusion that at all times the parties dealt with the bonds and the income thereof in the same manner as though such a document did not exist. While the wife alone had access to the box wherein the bonds were kept, she would clip the coupons and deliver them to plaintiff, or, with his consent, and in pursuance of a division of income, she would retain the dividends or interest therefrom while he would retain the income from other investments held in common.

For two years after 1921 the husband received the interest from the bonds and thereafter by reason of an agreed division of income the wife deposited the coupons to her own account, she at no time claiming the income as separate or additional to the income accruing from other joint investments. While, as stated in the Hotaling case (187 Cal. 695 [203 Pac. 745]), there might be possible ground for the trial court holding contrary to its made ruling, and we do

not attempt to point out by what manner of reasoning such contrary conclusion might be reached, nevertheless, there is abundant evidence not in itself unworthy of belief to support the judgment as made. This holding practically disposes of this phase of the appeal.

It might be noted in passing that the able counsel who is foremost in urging appellant's position is not the same counsel who tried the case in the court below. It is obvious that this earnest advocate has taken the record of the trial and scrutinized it most closely, bringing up in his argument the utmost detail and giving to each detached particle of evidence a weight and significance not merited. As would be the case in almost every trial record, many instances of discrepancy and apparent contradiction appear, but none worthy of further discussion on the question of the sufficiency of the evidence.

The argument of respondent, as applied to the case, is so convincing and the language so apt and fitting that we quote therefrom with our approval:

"The testimony of Monnette must be considered not only in respect of details but likewise in the large. It is obvious from reading the transcript that the gentleman, aged 80 years, did not always apprehend the shades of meaning in the questions propounded to him. The incidents in his testimony cannot change the general effect thereof. He was sufficiently clear on every important point. His testimony was entirely frank. The lower court was compelled to recognize the truth of his story, notwithstanding certain features which, under another set of circumstances would have been favorable to the contention that the bonds were Mrs. Monnette's. His narrative connected up convincingly with the atmosphere and background of the case . . . her previous marriages, her financial and property condition before and after the marriage and at her death, and the sidelights brought out by the testimony of other witnesses. Whether the lower court could have decided differently than it did, on the same evidence, is another question. Surely it would have decided differently had it not believed Mr. Monnette's story of what happened between himself and his wife. But it did believe him. It is common knowledge, as a simple human proposition, that in domestic relations, a husband, devoted to his wife or even on ordinary terms of conjugal

felicity is not building up carefully devised weapons and bulwarks in expectation of having to use them later against his wife or her legal representatives.''

While counsel for appellant complain of the difficulty of offsetting claims of this character, it is likewise true that with the safeguards of the law and the general distrust of the courts regarding transactions allegedly with persons deceased coupled with the keen scrutiny given the case of a plaintiff by the trial judge, the burden carried by a plaintiff is not light. And when, in the face of all of these obstacles a plaintiff is able to convince the trial court of the honesty of his contention and the truth of the facts in support thereof, it is not the function of a reviewing court, by means of easy psychological formula to set at naught the judgment obtained. Other legal points are presented, all having their bases on the weight of the evidence or on appellant's construction thereof. ██ It is urged that inasmuch as the acknowledgment of ownership was in writing and constituted a gift of the property therein described, the effect thereof cannot be overcome by oral testimony. Further, it is urged that the so-called companion document, being the acknowledgment of the husband's ownership, on the part of the wife, to the effect that all of the property of the wife belonged to the husband and should go to him on her demise, was testamentary in character and not being properly executed could have no legal effect. Appellant in these contentions seeks to give effect to but one part of the agreement between the spouses. The intention to create, by mutual acknowledgment, a joint right, with survivorship, is the essence of the transaction. If, as the trial court found, the bonds in question were the separate property of the husband, it must follow that if no effectual gift or other disposal thereof was made, they still remained his property. We must consider the attempted jointure in its entirety and as one transaction. Thus considered it negatives any idea of a gift or other transfer to the wife. (*Fanning* v. *Green,* 156 Cal. 282 [104 Pac. 308].)

██ Next, appellant urges certain errors of the trial court in the rejection of offered evidence. There are but two specifications. One involves a matter which was admittedly not material and the other is as to the rejection of evidence, the effect of which might have been to show

efforts on the part of plaintiff to secure a compromise from the heirs of the wife, though not seeking to prove admissions against interest or in conflict with his present action. We find no error prejudicial or otherwise. If, through some line of reasoning a technical error might be disclosed, the effect thereof would not warrant our disturbing the judgment.

■ The last ground urged by the appellant is the trial court's denial of the motion for a new trial. This motion was based primarily on the ground of newly discovered evidence. On the threshold of our inquiry into this branch of the case it may be stated as axiomatic that new trials on the ground of newly discovered evidence are not favored. Again, it may be added that even where the showing is apparently a strong one, much rests in the sound discretion of the trial judge. (*United States* v. *Meldrum,* 146 Fed. 390, 392; *Estate of Bainbridge,* 169 Cal. 166 [146 Pac. 427]; *Spiers* v. *Spiers,* 175 Cal. 557 [169 Pac. 73]; 1 Spelling's New Trial and Appellate Practice, 409; 4 Cor. Jur. 833.) It is also required that the new evidence upon which a new trial is sought must be evidence that is new and not cumulative or solely of an impeaching character. ■ Likewise is it true that a new trial will not be warranted on this ground where it is made to appear that a different judgment would not necessarily result from the new evidence if presented. And, lastly, and perhaps most important in order to warrant the granting of a new trial on this ground, it must appear that the evidence thus offered must be evidence that could not, with reasonable diligence have been obtainable at the trial. (*People* v. *Byrne,* 160 Cal. 217 [116 Pac. 521]; *Fresno Estate Co.* v. *Fiske,* 172 Cal. 583 [157 Pac. 1127]; *Arnold* v. *Skaggs,* 35 Cal. 684, 688; *Taber* v. *Beske,* 82 Cal. 214 [187 Pac. 746]; *Lawrence* v. *Pickwick Stages,* 68 Cal. App. 494 [229 Pac. 885].)

■ Without further citation of authority and without detailing all of the alleged newly discovered evidence, a careful reading of the record satisfies us that the evidence discovered is to some extent cumulative; that it would, if presented, be more or less argumentative, and could, if accepted, be subject to the same explanation as was made at the trial. The evidence offered has to do mainly with the acts and conduct of the wife, practically admitted at the

trial. The evidence was most readily and without effort obtainable at the trial as the source thereof was well known during every stage of the proceeding and many facts were in the possession of appellant that in themselves should have prompted the delay.ed inquiry. ▮ On top of this, the affidavits supporting the motion were categorically denied, which in itself was ground for denying the motion. (*People* v. *Mesa*, 93 Cal. 580 [29 Pac. 116]; *Shafer* v. *Willis*, 124 Cal. 36, 40 [56 Pac. 635].).

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 22, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 11, 1930.